FILED
FEBRUARY 22, 2010
KAREN S. MITCHELL
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| FERNANDO PATINO | § |
| Petitioner, | § |
| v. | § 2:06-CV-309 |
| RICK THALER, Director, Texas Dep't of Criminal Justice, Correctional Institutions Division, | § |
| Respondent. | § |

**REPORT AND RECOMMENDATION TO
DENY PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner FERNANDO PATINO has filed with this Court a Petition for a Writ of Habeas Corpus by a Person in State Custody challenging his conviction out of the 110th District Court of Briscoe County, Texas for the offense of murder. For the reasons set forth below, it is the opinion of the undersigned United States Magistrate Judge that petitioner's federal application for habeas corpus relief should be DENIED.

I.
FACTUAL AND PROCEDURAL BACKGROUND

During the late evening hours of June 29, 2002, petitioner saw his ex-girlfriend, Linda Baird, and a friend of his, Joe House, eating supper together at Ms. Baird's house. (Reporter's Record [hereinafter RR], vol. 7, pg. 20). Petitioner perceived that Mr. House was attempting to replace petitioner both as Ms. Baird's love interest and as father to the eight-year-old son petitioner and Ms. Baird shared. (*Id.*). Petitioner became extremely jealous and angry. (*Id.*). After seeing this,

petitioner drove to his employer's garage, stole a gun out of his employer's car (under the pretense that he needed to remove a battery charger from another vehicle in the garage), and drove to the house of a friend by the name of Juan Garcia who lived close to Ms. Baird. (*Id.* pg. 21; RR, vol. 4, pg. 141). After parking his car in front of Mr. Garcia's house, petitioner spoke with some of his friends who were also at the house for a while before walking back to Ms. Baird's house. (RR vol. 7, pgs. 21-22).

Upon returning to Ms. Baird's house, petitioner went to the window outside his son's room and asked his son where Ms. Baird and Mr. House were. (*Id.* pg. 22). His son told petitioner the two had gone to a store for some food; while petitioner was still at his son's window, they returned. (RR vol. 4, pg. 42). Petitioner went to the front of the house, where the two were getting out of the car, and opened fire. (RR vol. 7, pg. 22). Petitioner first shot Mr. House in the head and the shoulder, and Mr. House died that night from the head wound. (RR vol. 4, pg. 124). After shooting Mr. House, petitioner began shooting at Ms. Baird, who avoided being hit by any bullets. (RR vol. 4, pgs. 77; 119). When petitioner ran out of bullets, he began walking back to his car parked in front of Mr. Garcia's house. (RR vol. 7, pg. 24). At that point, petitioner was arrested by a police officer who lived close to Ms. Baird's house and had heard the gunshots. (*Id.* pg. 24).

In February 2003, a jury found petitioner guilty of murder and sentenced him to a sixty-year term of incarceration. (Clerk's Record, pgs. 71, 73). Judgment was affirmed on direct appeal, and a petition for discretionary review was refused. *Patino v. State*, No. 07-03-0131-CR, 2005 WL 1200850 (Tex. App.—Amarillo, May 19, 2005, pet. ref'd). In July 2006, petitioner applied for state habeas corpus relief, which was denied without written order in September 2006. *In re Patino*, WR-65,708-01. This federal habeas corpus petition followed.

## II.
## PETITIONER'S ALLEGATIONS

Petitioner appears to contend he is being held in violation of the Constitution and laws of the United States for the following reasons:

1. The police officer did not properly advise petitioner of his *Miranda* rights at his arrest.

2. The trial court improperly denied petitioner's challenges for cause of two prospective jurors.

3. The trial court improperly refused to allow petitioner to question his ex-girlfriend, Ms. Baird, about alleged prior intimate relationships with men.

4. The trial court failed to properly conduct a Texas Rule of Evidence 403 balancing test, in violation of petitioner's due process rights.

5. The evidence at trial was insufficient to support the verdict.

6. The trial court erred by refusing to include in its charge an instruction on three lesser included offenses.

7. Petitioner's sentence is illegal and in violation of his due process rights because he established he was under sudden passion when he committed the murder.

8. Petitioner re-alleges the alleged error raised in point 7.

9. Petitioner's conviction was improper because it was based on perjured testimony by his ex-girlfriend.

10. Petitioner received ineffective assistance of counsel because his trial attorney refused to subpoena a former love interest of Ms. Baird, a county attorney, and the local judge's secretary, the last two of which could verify Ms. Baird abused petitioner.

III.
STANDARD OF REVIEW

Petitioner may not obtain habeas corpus relief in this Court with respect to any claim adjudicated on the merits in the state court proceedings unless the adjudication of the claim resulted in a decision that was contrary to clearly established federal constitutional law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). All factual determinations made by a state court are presumed to be correct and such presumption can only be rebutted by clear and convincing evidence presented by petitioner. 28 U.S.C. § 2254(e).

Here, the state court heard and adjudicated, on the merits, the claims petitioner presents federally. More specifically, the Texas Court of Criminals Appeals denied petitioner's application for state habeas relief without a written order. A denial without written order is an adjudication on the merits. *Barrientes v. Johnson*, 221 F.3d 741, 780 (5th Cir. 2000); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Petitioner's burden before this Court is significantly heightened in that petitioner cannot prevail even if it is shown that the state court's determination was incorrect. Petitioner must also show the state court unreasonably applied federal law or made an unreasonable determination of the facts. *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002), *cert. denied Neal v. Epps*, 123 S. Ct. 963, 154 L. Ed. 2d 772 (2003).

Petitioner has failed to meet this burden. Rather than explaining why the state court's determination was incorrect, petitioner merely restates the grounds he presented to the state court. As detailed below, had petitioner correctly claimed unreasonableness or constitutional error by the state court, there is nothing in the record to support such a contention. A review of petitioner's claims confirms this petition should be denied.

## IV.
## REVIEW OF PETITIONER'S ALLEGATIONS

### *A. Miranda Rights*

Petitioner's first claim is that the arresting officer failed to properly give petitioner the required *Miranda* warnings when he arrested him. The purpose of *Miranda* and its requirements is to protect a criminal defendant's Fifth Amendment right to not be compelled to incriminate himself. *Miranda v. Arizona*, 384 U.S. 436, 439, 86 S. Ct. 1602, 1609, 16 L. Ed. 2d 694 (1966). The *Miranda* warnings are meant only as a means to an end—a way to protect a constitutional right, not a constitutional right in and of themselves. *United States v. Harrell*, 894 F.2d 120, 125 (5th Cir.), *cert. denied*, 498 U.S. 834, 111 S. Ct. 101, 112 L. Ed. 2d 72 (1990). Therefore, the failure to give a suspect his full *Miranda* warnings does not, in and of itself, amount to a constitutional violation. *United States v. Smith*, 7 F.3d 1164, 1170 (5th Cir. 1993). The constitutional violation arises only when incriminating statements made by the defendant who has not received the *Miranda* warnings are used against that defendant at trial. *Duckworth v. Eagan*, 492 U.S. 195, 203, 109 S. Ct. 2875, 2880, 106 L. Ed. 2d 166 (1989).

In this case, the arresting officer caught up to petitioner as he was walking back to his parked car. (RR vol. 4, pg. 52). After the officer had handcuffed petitioner, he returned to the scene, as he was the only police officer in the area at that time. (*Id*. pg. 54). Upon returning, the officer assisted the victims at the scene while petitioner remained handcuffed in the patrol car. (*Id.* pg. 55). When back-up police officers arrived, the arresting officer returned to his patrol car and advised petitioner of his *Miranda* rights. (*Id.*). Shortly thereafter, the officer took petitioner to the courthouse. At no point during the entire trial did a police officer testify as to *any* incriminating statement made by the

petitioner prior or subsequent to his arrest.[1]

Because there were no incriminating statements used against the defendant at trial, there was no Fifth Amendment constitutional violation in the arresting officer's delay in reading petitioner his *Miranda* rights. *See Duckworth*, 492 U.S. at 203, 109 S. Ct. at 2880. In his response to respondent's answer, petitioner contends the arresting officer lied when he stated he read petitioner his *Miranda* rights at the scene and, in fact, petitioner did not have his rights read to him until 4:30 in the morning. (Petitioner's Rebuttal Responsive Answer with Brief in Support [hereinafter "Petitioner's Rebuttal"], pg. 6). Petitioner's response is of no consequence. Petitioner fails to understand that even if the officer or court had never informed him of his *Miranda* rights, he would not have a meritorious claim because no incriminating statements were used against him at trial. This point of error is without merit.

### B. Petitioner's Challenges for Cause

Petitioner next contends the trial court erred by not sustaining his challenge for cause of two prospective jurors, each of whom he contends were too biased to impartially serve on the jury. A court always initially presumes that the jury was impartial, *United States v. O'Keefe*, 72 F.2d 1175, 1179 (5th Cir. 1983), and "[a] state trial court's refusal of a petitioner's challenge for cause is a factual finding entitled to a presumption of correctness." *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000). "The standard for determining when a venire member may be excluded for cause is whether the prospective 'juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Id.*

---

[1] In fact, the only testimony regarding what petitioner said to the officer came during the punishment stage of trial, when the arresting officer testified that at the courthouse (after being informed of his *Miranda* rights) petitioner had told him, "he'd just lost it and couldn't stand one of his friends seeing his woman . . . it was a crime of passion . . . none of this would have happened if Joe hadn't come to Silverton." (RR vol. 6, pg. 45).

During voir dire, venireman Estes and venireman Grimland both stated they had already formed an opinion that petitioner was guilty. (RR vol 3, pg. 67, 105). Venireman Estes, who had heard by word-of-mouth what happened, stated that although he believed the defendant was guilty his conclusion would not affect his verdict; he could set aside his opinion, ignore what he had heard, and base his decision on the evidence at trial. (*Id.* at pg. 37, 150). He additionally stated one of his cousins had married a House, but he was unsure how his cousin was related to the victim. (*Id.* pg. 174).

Venireman Grimland had heard about the incident from his brother-in-law, who lived across the street from Ms. Baird and was a witness for the State at trial. (RR vol. 3., pg. 143). He likewise stated he believed the defendant guilty, but his conclusion would not affect his verdict. (*Id.* pg 110). He additionally said he would hold the prosecution to its burden of proof, listen to the evidence presented at trial, and base his verdict on that evidence. (*Id.* pg. 105-06, 109).

Both veniremen stated they could perform their duties as jurors regardless of the opinions they had formed about petitioner's guilt. Neither juror fell under any of the other reasons for making a challenge for cause for their relation to people involved in the case. *See* TEX. CODE CRIM. PROC. ANN. art. 35.16 (Vernon 2006). As such, there was no basis for excluding them for cause. *See Soria*, 207 F.3d at 242. Petitioner has offered no evidence to contradict those statements and overcome the presumption that the jurors were impartial and the trial court did not err when denying his motion to exclude for cause. *See O'Keefe*, 72 F.2d at 1179. Accordingly, petitioner's second point of error is without merit.

### C. Petitioner's Questions for Ms. Baird

In his third point of error, petitioner contends the trial court erred by refusing to allow him

to question Ms. Baird as to her intimate relationships with other men.[2] Under Texas law, "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. As far as federal law is concerned, a defendant does not have a constitutional right to present irrelevant evidence. *Capps v. Collins*, 900 F.2d 58, 60 (5th Cir. 1990). During the trial, the following took place:

> [QUESTION from Defense Attorney]: Did you, during the seven years that you have told the jury that you and Fernando lived together during that period of time [sic], did you date any other men?
>
> [Prosecutor]: Objection, Your Honor –
>
> [ANSWER from Ms. Baird]: No, sir.
>
> [Prosecutor]: – relevance.
>
> [Defense Attorney]: Credibility, Your Honor.
>
> THE COURT: I'll sustain on the relevance, Counsel.

(RR vol. 4, pg. 85). Ms. Baird's "no, sir" answer was never stricken from the record. Further, the defense attorney created a Bill of Exception as to what Ms. Baird's testimony would have been. During the examination for the Bill of Exception, Ms. Baird again stated that she was never intimate with, dated, nor spent the night with any other man while she and petitioner were in a relationship. (*Id.* pg. 94-95).

Initially, the Court notes because Ms. Baird stated at trial, before the jury, that she did not date other men while she was with petitioner, and such testimony, though objected to, nevertheless came in on the record and was not stricken, petitioner's contention that the trial court should not

---

[2] In his memorandum supporting his petition, petitioner reverses points of error number three and four. For the sake of this Report and Recommendation, the Court follows the points as raised in the original petition.

have sustained the objection is moot. The testimony came in despite the sustained objection.

Secondly, the solicited evidence was not relevant. Ms. Baird's fidelity had no bearing on whether petitioner shot at and killed Mr. House. It was irrelevant during the guilt stage of trial (when it was offered), and none of petitioner's constitutional rights were violated when the trial court disallowed the testimony. *See Capps*, 900 F.2d at 60. Petitioner contends the testimony was relevant and demonstrated he acted under the influence of a sudden passion. He appears to be arguing Ms. Baird was unfaithful to him during their relationship, which caused him to act violently when he saw Mr. House at Ms. Baird's house. (Petitioner's Memorandum in Support of Petition, pg. 8). Petitioner's argument is undermined, however, by Ms. Baird's response to the questioning during the Bill of Exception hearing, in which she stated she always remained faithful to petitioner. (RR vol. 3, pg. 94). As the state appellate court pointed out, petitioner fails to explain how acts which did not occur incited him to murder. *Patino v. State*, 2005 WL 1200850 at *2.

Finally, even if it is assumed Ms. Baird had been unfaithful to petitioner and such unfaithfulness had caused petitioner to act the way he did, that evidence would only be relevant to whether petitioner acted under a sudden passion, not whether petitioner actually committed the murder.[3] Petitioner recognizes as much in his federal habeas corpus petition, where he only contends the testimony would have demonstrated sudden passion. (Petitioner's Memorandum in Support of Petition, pg. 8). As such, the line of questioning petitioner bases this argument on would have only been relevant during the punishment phase of trial. TEX. PENAL CODE ANN. § 19.02(d)

---

[3] In his response to the respondent's answer, petitioner contends Ms. Baird's fidelity was pertinent to the credibility of her testimony. It is well-established under the Texas Rules of Evidence, however, that "A witness's general character for truthfulness or credibility may not be attacked by cross-examining him (or offering extrinsic evidence) concerning specific prior instances of untruthfulness . . . Our state evidentiary rules frown on unnecessary character assassination." *Hammer v. State*, 296 S.W.3d 555, 563 (Tex. Crim. App. 2009). Even assuming Ms. Baird's fidelity did reflect on her general character for truthfulness, such a mode of impeachment is specifically barred by the Texas Rules of Evidence, rule 608(b). *See id.* In any event, the argument is made moot by the fact that Ms. Baird's maintained that she was faithful to petitioner.

("*At the punishment stage of trial*, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from adequate cause.") (emphasis added). The line of questioning the trial court disallowed was presented during the guilt stage of trial. Therefore, even if the testimony were relevant, it was only relevant during the punishment stage of trial. Presented at the guilt stage, it was irrelevant. *See id.* Because petitioner had no constitutional right to present irrelevant evidence, this point of error is without merit.

### D. Trial Court's Performance of Balancing Test

In his fourth point of error, petitioner contends the trial court violated his due process rights by failing to conduct a Texas Rule of Evidence 403 balancing test on his objection to certain photographs of the victim admitted into evidence during trial. An application for a writ of habeas corpus will not be granted unless the applicant has first exhausted the remedies available to him in state court. 28 U.S.C. § 2254. To have exhausted his state remedies, a habeas petitioner must have fairly presented the substance of his federal constitutional claims to the state courts. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997), *cert. denied*, 523 U.S. 1139, 118 S. Ct. 1845, 140 L. Ed. 2d 1094 (1998). This requires that any federal constitutional claim presented to the state courts be supported by the same factual allegations *and legal theories* upon which the petitioner bases his federal claims. *Picard v. Connor*, 404 U.S. 270, 276, 92 S. Ct. 509, 512, 30 L. Ed. 2d 438 (1971).

If a petitioner "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would find the claims procedurally barred,'" then the claim is procedurally defaulted. *Jones v. Jones*, 163 F.3d 285, 296 (5th Cir. 1998) (quoting *Nobles v. Johnson*, 127 F.3d at 420 (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)).

In this case, petitioner did not present any rule 403 balancing argument in his petition for

discretionary review. He did, however, raise such an argument in his state habeas corpus petition, in which he stated, "The trial court committed reversible error when it failed to conduct a Texas Rules of Evidence 403 balancing test and admitted the State's color photographs of the victim over petitioners [sic] objection that their probative value was outweighed by their prejudicial effects." (Record Created Upon Habeas Corpus Application No. WR-65,708-01, pg. 109). Thus, while petitioner does make the same factual allegations based upon the same photos in both state and federal habeas corpus petitions, he has failed to present the same legal theories to both courts. Petitioner did not present to the State court any federal constitutional claim as it relates to his rule 403 argument, he only framed it as a violation of Texas law. If petitioner were to file another habeas corpus petition in the state court so as to meet the federal exhaustion requirements, he would be procedurally barred from doing so by the Texas abuse of writ doctrine. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 § 4 (Vernon Supp. 2007). Because that court would find the claim procedurally barred, this Court is likewise barred from reviewing it. *See Jones*, 163 F.3d at 296.

Even if this claim were not procedurally barred, it lacks merit. Petitioner's argument appears to be that the trial court violated his due process rights by failing to conduct a balancing test as required by Texas Rule of Evidence 403. Petitioner fails to understand what the state appellate court has already told him: A trial judge does not have to explicitly, out loud and on the record, conduct a balancing test discussing the probative value and prejudicial effects of the evidence. By ruling on the objection, the trial judge implicitly conducted the required balancing test, meeting the requirements of the Texas Rules of Evidence. *See Patino*, 2005 WL 1200850, at *2; *Williams v. State*, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997). Therefore, the trial judge in this case did conduct the balancing test, and petitioner's contention to the contrary is baseless.

If petitioner meant to argue that the admission of the photos violated his due process rights

(and not merely the trial judge's failure to conduct a balancing test), he has failed to demonstrate such. A federal habeas court "does not sit to review the mere admissibility of evidence under state law." *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998). "[A] state trial court's evidentiary rulings will mandate habeas relief when errors are so extreme that they constitute a denial of fundamental fairness. Thus only when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted." *Id.* (internal citations omitted). The evidence in this case, two photographs of the head wound to the victim, certainly did not amount to the level of "highly significant" in the trial. The photos were discussed for less than a page of the record when they were admitted and were not discussed at any other point during the trial. (RR vol. 5, pg. 6). Assuming, *arguendo*, that their admission was erroneous, it was not of a magnitude warranting habeas corpus relief. *See Little*, 162 F.3d at 862. Petitioner's fourth ground of error is procedurally barred, and, in the alternative, without merit.

### E. Sufficiency of the Evidence

In his fifth point of error, petitioner contends the evidence supporting the guilty verdict is legally insufficient in that there was insufficient evidence he shot at the victim. This claim is unexhausted. As stated in subsection D above, any federal constitutional claim presented to the state courts must be supported by the same factual allegations and legal theories upon which the petitioner bases his federal claims in order to be considered properly exhausted. *Picard*, 404 U.S. at 276, 92 S. Ct. at 512. Petitioner presented his insufficient evidence claim to the state court in his habeas corpus application as follows: "The trial court committed reversible error because there is insufficient evidence that petitioner 'intentionally and knowingly' killed Joe House." (Record Created Upon Habeas Corpus Application No. WR-65,708-01, pg. 109). Petitioner failed to raise

any constitutional error created by the allegedly insufficient evidence. Therefore, were petitioner to contend that a constitutional right was violated by the insufficient evidence supporting the verdict, he would be barred for failing to exhaust such a claim at the state level. *See Picard*, 404 U.S. at 276, 92 S.Ct. at 512.

Even if petitioner had properly raised the issue for review, the state appellate court articulated the plethora of evidence supporting the verdict—evidence which went completely unrefuted by petitioner. *Patino*, 2005 WL 1200850, at *4-5. (*See* RR vol. 4, pgs. 10, 42, 47, 52, 78, 104, 111, 141 (witness statements)). The state court additionally spoke of transferred intent and why petitioner's argument that he was only trying to kill Ms. Baird, not Mr. House, is not helpful to his position. *Id.* at *6. Petitioner's fifth ground of error is unexhausted, and, in the alternative, without merit.

### F. Lesser Included Offenses Instruction

In his sixth ground of error, petitioner contends his due process rights were violated by the trial court's refusal to include in its charge at the guilt stage of trial an instruction on three lesser included offenses. "In a non-capital murder case, the failure to give an instruction on a lesser included offense does not raise a federal constitutional issue." *Creel v. Johnson*, 163 F.3d 385, 390 (5th Cir. 1998) (quoting *Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir. 1988)). Further, the state appellate court evaluated this contention and determined it to be without merit; and the Texas Court of Criminal Appeals refused to grant a petition for discretionary review on this argument. *See Patino*, 2005 WL 1200850. Moreover, when petitioner raised this argument in his state application for habeas corpus relief, the Texas Court of Criminal Appeals denied review, which constitutes a ruling on the merits. *See Barrientes*, 221 F.3d at 780. All state courts reviewing this issue have

determined that the evidence did not support an instruction on manslaughter, aggravated assault, or deadly conduct, as urged by petitioner. This Court defers to the state court's interpretation of Texas law for whether a lesser-included-offense instruction is warranted. *See Creel*, 163 F.3d at 390. Because a lesser included offense instruction is not a federal constitutional matter in this case, petitioner's sixth point of error is not cognizable for review.

### *G. Sudden Passion Claim*

In his seventh and eighth points of error, petitioner contends his sentence was illegal and his due process rights were violated because the evidence established he acted under the influence of a sudden passion arising from adequate cause. Under Texas law, if a person kills another when acting in the heat of a sudden passion, then the classification of the offense is decreased from a first-degree felony to a second-degree felony. TEX. PENAL CODE ANN.§ 19.02(d). "Adequate cause" means cause that "would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* § 19.02(a)(1). And "sudden passion" is a passion directly arising from the provocation at the time of the offense. *Id.* § 19.02(a)(2).

During the punishment phase of trial, petitioner presented, *inter alia,* the testimony of a psychiatrist and the arresting police officer. The psychiatrist testified "at the time of the occurring allegations against him . . . [Patino] was not capable of rationally evaluating his behavior and not capable of discontinuing his behavior." (RR vol. 6, pg. 25). The police officer additionally testified that petitioner himself had said "he'd just lost it and couldn't stand one of his friends seeing his woman. And also . . . it was a crime of passion . . . none of this would have happened if Joe hadn't come to Silverton." (RR vol 6, pg. 45). Petitioner contends these statements establish as a matter

of law that he was acting in the heat of a sudden passion.  The trial judge instructed the jury on sudden passion, but the jury clearly did not believe petitioner was acting under the influence of a sudden passion, as it sentenced him to a term of incarceration reserved only for first-degree felonies.

After reviewing the record in this case, it is clear the state appellate court was correct in its description of the facts as follows:

> Appearing of record is evidence that on the night of the shooting, appellant 1) saw House at Baird's home, 2) called his (appellant's) employer, Flournoy Hutsell, and told Hutsell that he needed to take a battery charger off another vehicle in Hutsell's garage, 3) entered the garage and acquired a pistol, 4) drove to the home of Juan Garcia (a friend of appellant), 5) spoke with Garcia for a bit and asked if he could leave his car there, 6) did not appear angry to Garcia, 7) walked one or two blocks to Baird's house, 8) inquired about Baird's presence when he arrived, 9) discovered that Baird and House had gone to a convenience store, 10) waited for their return, and 11) shot House upon his return. There is no evidence that either Baird or House spoke to appellant before the first shot was fired. The foregoing evidence was and is sufficient to permit a jury to reasonably infer that appellant had time to reflect and actually reflected upon his actions before undertaking them. And, because it did, the jury was entitled to reject the claim of sudden passion.  That a psychologist expressed his opinion about appellant having acted under sudden passion did not require the jury to find otherwise for it was free to reject that testimony.

*Patino*, 20056 WL 1200850, at *4 (internal citations omitted).  Petitioner has failed to show how the state court's determination that there was sufficient evidence supporting the jury's determination he was not acting under a sudden passion was unreasonable.  28 U.S.C. § 2254(d).

Consequently, no federal habeas corpus relief is warranted because there was sufficient evidence in the record for the jury to believe petitioner had the time—approximately thirty minutes—to come out from under the influence of a sudden passion. (RR vol. 7, pg. 18 (petitioner's testimony he initially saw the two together at approximately 11:30 p.m.); vol. 4, pgs. 18, 76, 47 (witness testimony that the shooting occurred between 12:05 and 12:10 a.m.)).  *See Anderson v. Collins*, 18 F.3d 1028, 1219 (5th Cir. 1994) (concluding an intervening action requiring cool

reflection and calmness refutes the suggestion a defendant was acting under a sudden passion when committing a murder); *Ex parte Watkins*, 73 S.W.3d 264 (Tex. Crim. App. 2002) (a murder occurring five minutes after the provocation is not excused by sudden passion); *Gold v. State*, 736 S.W.2d 685 (Tex. Crim. App. 1987), *overruled on other grounds, Torres v. State*, 785 S.W.2d 824 (Tex. Crim. App. 1989) (a murder occurring eight to ten minutes after the provocation is not excused by sudden passion). Petitioner's seventh and eighth points of error are without merit.

### H.  Perjured Testimony

In his ninth ground of error, petitioner contends his trial was tainted by perjured testimony. Specifically, petitioner claims Ms. Baird lied that petitioner said, "You son of a bitch" to Mr. House and that he had actually said, "You bitch" to Ms. Baird. (Petitioner's Memorandum in Support of Petition, pg. 13). He contends the prosecutor repeated this testimony to the jury during closing statements to inflame them. (*Id.* pg. 13-14). He further claims one of the witnesses lied as to the number of shots he heard that night (the witness stated he heard six shots, petitioner claims there were only five). (*Id*). And he finally claims that Ms. Baird's fifteen-year-old daughter incorrectly testified to the amount of time he and Ms. Baird had been separated. (*Id*).

To establish a constitutional violation based on perjured testimony, a petitioner must show, "(1) the actual falsity of a witness's testimony, (2) that the testimony was material, and (3) that the prosecution knew the witness's testimony was false." *Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001). Initially, petitioner fails to demonstrate that any of these statements were actually false. Petitioner acknowledges the difficulty in proving these statements to be false and simply claims, "these are not speculations these were facts." (Petitioner's Rebuttal, pg. 18). Such statement, however, falls far short of actual proof of the statements being false. *Kutzner*, 242 F.3d at 609.

Even if the Court were to believe petitioner and assume these statements were indeed incorrect, petitioner cannot meet the requirement that the perjured statements are material. *See id.* All of them relate to minor issues tangential to the main issue of whether he intentionally shot Mr. House, and on that testimony there was never any variance. Moreover, petitioner fails to bring forward any evidence whatsoever that the prosecutor knew these statements to be false. *See id.* Petitioner's ninth point of error is without merit.

### I. Ineffective Assistance of Counsel

In his tenth point of error, petitioner contends he received ineffective assistance of counsel because his trial attorney refused to subpoena (1) a former love interest of Ms. Baird, (2) a county attorney, and (3) the local judge's secretary, the last two of which could verify Ms. Baird abused petitioner.

The proper standard for judging a petitioner's contention he is entitled to relief on the ground that his trial counsel rendered ineffective assistance is enunciated in *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674 (1984). Under the two-pronged *Strickland* standard, a petitioner must show defense counsel's performance was both deficient and prejudicial. *Id.* at 687, 104 S. Ct. at 2064. An attorney's performance was deficient if it fell below the standards of reasonably competent representation as determined by the norms of the profession. *Id.*

Counsel cannot be deemed ineffective for failing to call witnesses who are not shown to have been available and willing to testify. *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986); *Gomez v. McKaskle,* 734 F.2d 1107, 1110 (5th Cir. 1984). Because the decision of which witnesses to call at trial is essentially one of strategy, and because allegations of what a witness would have said are largely speculative, such claims are looked upon with disfavor. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (citing *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983)). In

order to prevail on a claim of ineffective assistance for failure to call a witness, therefore, a petitioner must show the witness would have testified and the witness's testimony would have been favorable. *Id.*

Additionally, a petitioner must show counsel's deficient performance prejudiced the defense. To establish this prong, a petitioner must show counsel's errors were so serious as to deprive petitioner of a fair trial. *Id.* at 687, 104 S. Ct. at 2064. Specifically, to prove prejudice a petitioner must show "(1) there is a reasonable probability that, but for counsel's unprofessional errors, the ultimate result of the proceeding would have been different . . . and (2) counsel's deficient performance rendered the trial fundamentally unfair." *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998).

Here, petitioner fails to prove that all of the witnesses he claims his attorney should have subpoenaed were willing and available to testify. *See Lockhart*, 782 F.2d at 1282. Furthermore, he fails to prove what the witnesses would have testified about and that such testimony would have been favorable.[4] *See Alexander*, 775 F.2d at 602. As such, he has failed to demonstrate his attorney's performance was deficient. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.

Even if the Court were to assume, *arguendo*, all of the elements for showing deficient performance, petitioner presents nothing demonstrating prejudice, i.e., how such testimony would have altered the outcome of the trial. *See Creel*, 162 F.3d at 395. Even if Ms. Baird were abusive toward petitioner and even if she had a relationship with another man after petitioner had left her, such would not contribute to a sudden passion defense. In fact, they would arguably tend to show

---

[4] The Court notes petitioner himself, when given the opportunity to testify during the punishment stage of trial, never stated Ms. Baird abused him in any way. Instead, he merely said, "She had a pretty short fuse. And, you know, uh, she would just get mad for any little thing. And I mean, I couldn't do much. She wouldn't give me a chance to put in two words, you know. And – she would just tell me to leave." (RR vol. 7, pg. 13).

the opposite—that petitioner acted in a calculated fashion based on Ms. Baird's abusiveness and infidelity, not that he was acting under a sudden passion created by "the individual killed or another acting with the person killed which passion *arises at the time of the offense* and *is not solely the result of former provocation.*"  *See* TEX. PENAL CODE § 19.02(a)(1) (emphasis added).  Petitioner fails to meet any requirements showing ineffective assistance of counsel.[5]  As such, his tenth point of error is without merit.

## V.
## RECOMMENDATION

Petitioner has failed to present any meritorious claim warranting federal habeas corpus relief. Therefore, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for a Writ of Habeas Corpus by a Person in State Custody filed by petitioner FERNANDO PATINO be DENIED.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 22nd day of February, 2010.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

---

[5] In his rebuttal brief to the respondent's answer, petitioner contends his trial attorney admitted petitioner received ineffective assistance of counsel. (Petitioner's Rebuttal, pgs. 19, 21). A review of the document in which the attorney purportedly made this admission reveals the attorney never stated *he* rendered ineffective assistance. Rather, he stated petitioner was denied effective representation by some of the trial court's evidentiary rulings. (*Id.*).

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).